## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

NCTA – THE INTERNET & TELEVISION
ASSOCIATION,

      Plaintiffs,

      v.

AARON FREY, in his official capacity as
Attorney General of the STATE OF MAINE,
TOWN OF FREEPORT, MAINE; TOWN OF
NORTH YARMOUTH, MAINE,

      Defendants.

Civil Action No.  2:19-cv-00420-NT

## MOTION TO DISMISS OF DEFENDANTS TOWN OF
## FREEPORT AND TOWN OF NORTH YARMOUTH

Defendants the Town of Freeport ("Freeport") and the Town of North Yarmouth ("North

Yarmouth") (collectively, the "Towns"), by their undersigned counsel, respectfully submit this

Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Through

this Motion, the Towns request that the Court dismiss all claims against them in this lawsuit.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff NCTA – The Internet & Television Association ("NCTA") is a trade association

representing cable operators, and has brought this action ostensibly on behalf of its members

Charter Communications, Inc. ("Charter") and Comcast Cable Communications ("Comcast").

Complaint (ECF Doc. 1) ("Compl.") ¶¶ 1, 2.  Plaintiff alleges that a recently-enacted Maine state

law—L.D. 1371, "An Act To Ensure Nondiscriminatory Treatment of Public, Educational and

Governmental Access Channels by Cable System Operators" ("L.D. 1371")[1]—imposes certain requirements on cable operators in Maine, including line-extension requirements governing the extension of cable service to low-density residential areas, and requirements with respect to public, educational, and governmental access channels ("PEG channels"). *Id.* ¶¶ 1, 5. NCTA seeks, pursuant to 42 U.S.C. §§ 1983 and 1988 (collectively, "Section 1983"), a declaratory judgment, preliminary and permanent injunctions, and attorneys' fees. *Id.* at pp. 35–36 (Request for Relief). NCTA has sued Maine Attorney General Aaron Frey in his official capacity as the state official charged with enforcing the requirements of the Maine cable franchise laws. *Id.* ¶¶ 10–11.

Freeport and North Yarmouth have also been sued, but there is a remarkable paucity of factual allegations as against the Towns. The Complaint asserts that Comcast currently holds a franchise agreement with Freeport to construct and operate a cable system within its jurisdiction. *Id.* ¶ 12. The Complaint asserts that Charter currently holds a franchise agreement with North Yarmouth. *Id.* ¶ 13. According to the Complaint, Comcast and Charter together have franchise agreements with over 300 Maine municipalities, *id.* ¶ 2, yet only two—Freeport and North Yarmouth—are Parties to this lawsuit.

There is no allegation that the Towns have taken any action to enforce L.D. 1371 against NCTA or its members. *See generally* Compl. There is no allegation that the Towns have threatened any enforcement action. *Id.* There is no allegation that either Town has sought to amend any provision of its franchise agreement with Charter or Comcast. *Id.* There is no allegation that either Town has adopted any policy or ordinance pursuant to L.D. 1371. *Id.*

---

[1] The statute titles and sections as codified are 30-A M.R.S. §§ 3008(5)(B), (C), (D), (D-1); 3008(7); and §§ 3010 first ¶, (5-A), (5-B), (5-C).

There is no allegation that either Town so much as testified in support of L.D. 1371. *Id.* In short, there is no allegation the Towns have done anything at all in relation to L.D. 1371.[2]

Instead, the inclusion of the Towns in this lawsuit appears to be based solely on NCTA's speculation that the Towns *might* seek to revoke their franchise agreements at some unspecified future date or might seek to bring some sort of enforcement action against Charter or Comcast in the future. The Complaint asserts that "[b]ecause the Maine Act purports to alter existing franchise agreements to include the PEG provisions and line-extension requirement, NCTA members *could* face liability from defendants the Towns of Freeport and North Yarmouth who *may* attempt to revoke their franchises for alleged material default." Compl. ¶ 136 (emphasis added).

NCTA's claims fail because municipal liability pursuant to Section 1983 will not lie where the only allegation against the Towns is that they *could*, at some indefinite point in the future, seek to enforce a state statute. Under established Supreme Court precedent, municipal liability pursuant to Section 1983 requires some established policy, ordinance, decision, or settled practice of the municipality itself that is the moving force behind the constitutional violation. There is none here. In addition, NCTA's claims against the Towns are not ripe, and Plaintiff does not have standing to assert claims against the Towns based upon nothing more than the theoretical possibility that the Towns could, at some indefinite point in the future, seek to enforce a state statute. For all these reasons, NCTA's claims against the Towns should be dismissed for failure to state a claim and for lack of subject matter jurisdiction.

---

[2] The Complaint asserts that the "Freeport access channel coordinator recently sought carriage of two PEG channels in HD format," Compl. ¶ 12, but the Complaint contains no further information or detail concerning this alleged request, does not link this request to L.D. 1371, and does not reference any further follow-up.

**LEGAL STANDARD**

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to establish every element of the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* If the facts alleged, taken as true, would not "state a claim to relief that is plausible on its face," the action must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. NCTA, as the party seeking to invoke the jurisdiction of the federal courts, has the burden of establishing such jurisdiction, including that all the elements of standing are met. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the pleadings stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

**ARGUMENT**

**I.     Plaintiff Has Failed To State A Claim Against The Towns Under Section 1983**

Regardless of the merits of NCTA's claims against Attorney General Frey, the Complaint fails to state a claim against the Towns because NCTA has wholly failed to allege—and could not truthfully allege—that there is a *municipal* custom, policy, or practice at issue in this case that violates the constitutional rights of NCTA or its members. *See generally* Compl. Under the seminal Supreme Court decision in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and the

case law following it, the Towns cannot be held liable under 42 U.S.C. § 1983 because there is

no such policy and NCTA's claims are predicated solely on the passage of a state law.

In *Monell*, the Supreme Court held that municipal liability pursuant to Section 1983

requires the formal adoption of an unconstitutional policy, ordinance, regulation, or decision by

the municipality itself.  436 U.S. at 690.  The Court stated:

> Local governing bodies . . . can be sued directly under § 1983
> for monetary, declaratory, or injunctive relief where, as here, the
> action that is alleged to be unconstitutional implements or executes
> a policy statement, ordinance, regulation, or decision *officially
> adopted and promulgated by that body's officers*. . . .
>
> On the other hand, the language of § 1983, read against the
> background of the same legislative history, compels the conclusion
> that Congress did not intend municipalities to be held liable unless
> action *pursuant to official municipal policy* of some nature caused
> a constitutional tort.

*Id.* at 690-91 (emphasis added) (footnote omitted).  Liability under *Monell* may also be

established by demonstrating municipal "practices . . . so permanent and well settled as to

constitute a 'custom or usage' with the force of law."  *Id.* at 691 (quotation marks omitted).  In

either case, however, municipal liability pursuant to Section 1983 requires an official municipal

policy, ordinance, decision, or settled practice.  *Id.*

In other words, the standard for establishing municipal liability under Section 1983 is

heightened and requires some action *of the municipality itself*.  *See Connick v. Thompson*, 563

U.S. 51, 60 (2011) ("[U]nder § 1983, local governments are responsible only for their *own* illegal

acts.") (emphasis in original) (quotation marks omitted).  Indeed, the municipal policy must be

the "moving force" behind the violation.  *Monell*, 436 U.S. at 694.  "[M]unicipal liability

under § 1983 attaches where—*and only where*—a deliberate choice to follow a course of action

is made from among various alternatives by [the municipality] with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (emphasis added).

Here, NCTA has not alleged—and cannot allege—the formal adoption of a municipal policy, ordinance, or "custom or usage" that is the "moving force" behind any injury because, as discussed above and as the Complaint acknowledges, the Towns have taken *no* action with respect to L.D. 1371.  At most, Plaintiff's claims against the Towns are based solely on NCTA's allegation that one or both of the Towns—or one or more of Maine's 305 other franchising authorities—*could* seek to enforce L.D. 1371 at some indefinite point in the future, though neither Town has yet sought to do so.  *See, e.g.*, Compl. ¶¶ 136, 148, 160, 175.  This is insufficient to bring a claim pursuant to Section 1983.  *See Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 n.4 (7th Cir. 1991) (refusing to construe a state law as a municipal policy for a Section 1983 claim on the ground that doing so "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors—here, the [state] legislature"); *Wong v. City & Cnty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Haw. 2004) ("[M]ere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability."); *Anderson v. Town of Durham*, No. CV-02-480, 2003 WL 25826919 (Me. Super. May 14, 2003) (reiterating that "*any* municipal liability under section 1983, regardless of the relief sought, must be premised on some culpable act that can fairly be attributed to the municipality") (emphasis in original) (citing *Strout v. Maine Dept. of Education,* No. 97-259-B-H (D. Me., Jan. 26, 1998) (Hornby, J.)).  This is fatal to NCTA's claims against the Towns, which should therefore be dismissed.

Certain courts have held that *Monell* proscribes municipal liability where enforcement of a state statute is mandatory, but that a municipality could be held liable for enforcing a statute it has discretion to enforce under appropriate circumstances:

> [W]e agree with all circuits to address state laws mandating enforcement by municipal police offers that a municipality's decision to honor this obligation is not a conscious *choice*. As a result, the municipality cannot be liable under *Monell* in this circumstance. On the other hand, if a municipality decides to enforce a statute that it is authorized, but not required, to enforce, it may have created a municipal policy. However, we do not believe that a mere municipal directive to enforce all state and municipal laws constitutes a city policy to enforce a particular unconstitutional statute. . . . [I]t is necessary, at a minimum, that a municipal policymaker have focused on the particular statute in question. We, therefore, hold that there must have been conscious decision making by the City's policymakers before the City can be held to have made a conscious choice.

*Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) (emphasis in original) (footnotes omitted). While the First Circuit has not weighed in on this issue, under either of the scenarios discussed above, NCTA's claims against the Towns would fail. If enforcement of L.D. 1371 is mandatory, then NCTA has no Section 1983 claim against the Towns under *Monell*. *See Vives*, 524 F.3d at 353. If, on the other hand, the Towns have discretion to enforce L.D. 1371, then NCTA lacks standing against the Towns and its claims are unripe, and NCTA still has not stated a sufficient municipal policy or act, because neither Town has taken or so much as threatened such action. *See, e.g., Nichols v. Brown*, 859 F. Supp. 2d 1118, 1127 (C.D. Cal. 2012) (finding no standing against municipal defendants who could seek to enforce a state law, but had not yet done so, since "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability" (quotation marks omitted)). Thus, under any scenario, NCTA's Section 1983 claims against the Towns fail as a matter of law.

In short, *Monell* imposes a heightened requirement for Section 1983 liability against municipalities, and requires some independent, deliberate conduct on the part of the municipality

before liability pursuant to Section 1983 will attach.  Plaintiff has failed to allege any such conduct here.  Accordingly, Plaintiff has failed to state a claim against the Towns, and they should therefore be dismissed.

## II.     NCTA Does Not Have Standing To Bring This Suit Against The Towns

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a plaintiff has standing."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008).  As an "irreducible constitutional minimum," the party asserting standing has the burden to demonstrate that three elements are met.  *Lujan*, 504 U.S. at 560.  Specifically, a plaintiff must show that: (1) it has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 560–61 (citations and internal quotation marks omitted).  "A failure to meet any one of these three criteria constitutes a 'lack of Article III standing and requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'"  *Nichols*, 859 F. Supp. 2d at 1127 (alteration omitted) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)).  Here, NCTA fails to satisfy all three elements of standing with respect to the Towns.[3]

---

[3]  Standing must be separately analyzed with respect to each defendant.  *See Easter v. American West Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (holding that the district court properly found the plaintiffs lacked standing to sue certain defendants, because the alleged injury was not fairly traceable to those defendants); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015) ("[T]o hold each defendant in the case, there must be at least one named plaintiff with standing to sue said defendant.").

A.    **NCTA And Its Members Have Not Suffered Any Injury In Fact Vis-à-vis The Towns**

"The first and foremost concern in standing analysis is the requirement that the plaintiff establish an injury in fact." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (alteration and quotation marks omitted).  As noted above, to satisfy Article III standing, the injury must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560.  "This requirement 'ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time.'" *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 8 (1st Cir. 2018) (citing *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)).  "[I]f a future injury is 'too speculative for Article III purposes and no prosecution is even close to impending,' then there is no standing to sue." *Reddy*, 845 F.3d at 500 (internal quotation marks omitted).

Here, NCTA's allegations of injury vis-à-vis the Towns are entirely speculative and rest upon contingent future events, and therefore do not demonstrate the "actual or imminent" injury necessary to establish standing.  As noted above, NCTA's only allegation of injury that relates to the Towns is NCTA's assertion that "NCTA members *could* face liability from defendants the Towns of Freeport and North Yarmouth who *may* attempt to revoke their franchises for alleged material default."  Compl. ¶ 136 (emphasis added).  There is no allegation that either of the Towns has taken such action, or that either Town has so much as threatened any enforcement action or revocation of their franchise agreement.  Thus, NCTA has wholly failed to establish that any enforcement action by Freeport or North Yarmouth is imminent or "is even close to impending," and any injury to NCTA members as a result of some theoretical future action by Freeport or North Yarmouth is purely "conjectural" and "hypothetical" at this time. *Reddy*, 845 F.3d at 500 (quotation marks omitted).

9

While the Complaint's total lack of any allegations demonstrating an actual or imminent injury by the Towns is sufficient in itself to warrant dismissal, the Court should also find that NCTA has failed to establish any injury in fact with reference to the specific procedural requirements for undertaking action against NCTA's members pursuant to both the Freeport and North Yarmouth cable franchise agreements.  The Court may consider these agreements on this Motion because they establish a lack of jurisdictional standing, and because they are referred to in the Complaint and their authenticity is not in dispute.[4]  *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) ("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion."); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (where factual allegations are "expressly linked to" and depend on a document whose authenticity is not disputed, the document merges into the pleadings even if not attached to the complaint).

Here, both franchise agreements contain provisions that purport to require lengthy processes and procedures before either Town may revoke or terminate its franchise agreement for alleged material breach, which further demonstrate the lack of any actual or imminent injury vis-à-vis the Towns.  *Cf.* Compl. ¶ 136 (alleging, as the only basis for injury, that one or both Towns "may" attempt to revoke their franchise agreements).  Comcast's franchise agreement with Freeport states that the Town must provide written notice of intent to revoke the franchise, after which Comcast *has 90 days* to correct or dispute the alleged violation.  Declaration of Peter

---

[4]  The franchise agreements are exhibits to the declarations of Rosemary Roy and Peter Joseph, submitted with the Towns' Opposition to NCTA's Motion for a Preliminary Injunction.  In addition, pursuant to Maine law, cable operators are required to post their most recent franchise agreements on their website. *See* 30-A M.R.S.A. § 3010(8) ("A cable system operator that maintains a publicly accessible website shall post on that website a copy of the most recently executed franchise agreement for each franchise that it has been granted by a municipality in the State.").  Comcast's franchise agreement with Freeport may be found here:   https://www.xfinity.com/mainefranchises.   A diligent search of Charter's website did not reveal its franchise agreement with North Yarmouth, notwithstanding the law.

Joseph ("Joseph Decl."), Ex. A (Freeport Franchise Agreement), at 34, § 26(B).  If Comcast disputes the alleged violation and the Town continues to maintain a violation has occurred, Comcast is granted a *further 90-day cure period*.  *Id.*  Similarly, pursuant to Charter's franchise agreement with North Yarmouth, the Town must provide written notice of intent to revoke after which Charter has 60 days to either object or cure, and the Town must then hold a public hearing which requires a further 30-days advance notice to Charter.  Declaration of Rosemary E. Roy ("Roy Decl."), Ex. A (North Yarmouth Franchise Agreement), at 11, § 14.5.  There is no allegation that either Town has invoked these procedures or has provided any notice of an intent to revoke the franchise agreement, formal or informal.  *Cf.* Compl. ¶ 136.

In short, NCTA has wholly failed to establish that any enforcement action by Freeport or North Yarmouth is "actual or imminent" or "even close to impending," and any injury to any NCTA member as a result of any action by the Towns is purely "conjectural" and "hypothetical" at this time.  This lack of actual imminent injury is highlighted by the fact that NCTA has chosen to sue only 2 of the 307 municipalities with which its members have franchise agreements, which undermines any argument that relief against the franchising authorities themselves is necessary to prevent an actual, imminent injury.  Compl. ¶ 27 (noting that "NCTA members . . . hold 307 separate franchises" in Maine).  It would be bad public policy and contrary to established jurisdictional principles to permit deep-pocket corporations to force local municipalities into federal court under these circumstances, merely because a state statute is enacted that municipalities could theoretically enforce at some indefinite time in the future.  Accordingly, the Court should dismiss this action as against the Towns.

**B.      NCTA's Allegations Of Harm Are Not Fairly Traceable To Any Challenged Conduct Of The Towns**

Relatedly, and equally important, the alleged harm must be "fairly traceable" to some challenged conduct of a defendant in order for standing to exist as to that defendant.  *Lujan*, 504 U.S. at 560.  This causation requirement demands "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).  "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party."  *Katz*, 672 F.3d at 71–72.

Courts have held that the mere right to sue under a challenged statute, or to seek to enforce a statute, does not satisfy the causation element.  In *Nova Health Sys.*, the Tenth Circuit Court of Appeals considered a constitutional challenge to an Oklahoma statute making abortion providers liable for any subsequent medical costs required by a minor because of an abortion performed without parental consent.  416 F.3d at 1152.  The plaintiff, Nova Health Services, brought suit against certain public officials who oversaw public health care facilities, and who could theoretically seek recovery against Nova pursuant to the statute.  *Id.*  The court noted that these defendants had "not attempted to recover any medical costs from Nova under the challenged statute, although it is possible that they may seek to do so sometime in the future." *Id.*  The Court held that "Nova lacked standing to bring this lawsuit because it has not shown that the injury it may have suffered due to the challenged Oklahoma law was caused by these particular defendants or that it would be redressed by a judgment against them."  *Id.* at 1153.

On the issue of causation, the Tenth Circuit found that the plaintiff had "failed to show the required causal connection between its injury and these defendants."  *Id.* at 1157.  The court first noted that "there is no evidence that the defendants have done or have threatened to do

12

anything that presents a substantial likelihood of causing Nova harm." *Id.* The court observed that Nova had "confused the *statute's* immediate coercive effect on the plaintiff with any coercive effect that might be applied by the *defendants*." *Id.* (emphasis in original) (alterations and quotation marks omitted). The court noted that while "[i]t may be true that these defendants potentially have the power to sue Nova under [the statute], . . . if these defendants' latent power to litigate were enough to support standing, *anyone* who might someday have a claim under [the statute] could be summoned preemptively before the federal courts to defend the constitutionality of that statute." *Id.* (emphasis in original). The Tenth Circuit summed up: "Article III does not allow a plaintiff who wishes to challenge state legislation to do so simply by naming as a defendant anyone who, under appropriate circumstances, might conceivably have an occasion to file a suit for avid damages under the relevant state law at some future date." *Id.* at 1157–58; *cf.* Motion for Preliminary Injunction (ECF Doc. 3) at 18 (asserting, as alleged harm, the speculative possibility of a suit for liquidated damages against a NCTA member).

Similarly, in *Nichols v. Brown*, a California federal district court held that a plaintiff lacked standing against municipal defendants to challenge a state statute on constitutional grounds where the municipal defendants had not sought to enforce the state law. 859 F. Supp. 2d at 1132–33. The court noted that "Plaintiff has failed to allege facts establishing that the [municipal defendants] have a sufficient connection to his alleged injury to establish jurisdiction." *Id.* at 1132. The court noted that "Plaintiff's injury, as currently alleged, is not traceable to the [municipal defendants]. Section 25850 is a state law, not a municipal ordinance." *Id.* at 1133. The court observed that, "[a]t most, Plaintiff's claim against the [municipal defendants] appears to be based on the fact that these defendants enforce state law, including section 25850." *Id.* The court noted that "mere enforcement of a state statute is not a

sufficient basis for imposing § 1983 municipal liability." *Id.* (quotation marks omitted).  On this basis, the court held that the "Plaintiff's claims do not establish that the [municipal defendants] have any connection to his alleged injury and fail to satisfy the second prong of the standing analysis." *Id.* at 1134.

Similarly, here, any injury asserted or suffered by NCTA or its members is not fairly traceable to the Towns.  L.D. 1371 is a state law, not a municipal ordinance.  There is no allegation that the Towns have sought, in any way, to enforce L.D. 1371 against any NCTA member.  There is no allegation that any Town has sought to amend its franchise agreement with a NCTA member on the basis of L.D. 1371.  There is no allegation that any municipal ordinance has been enacted on the basis of L.D. 1371.  NCTA has not provided any basis on which the Court could conclude that one of these two Towns—as opposed to one or more of the other 305 Maine franchising authorities—would seek to enforce L.D. 1371, which is a further reason that NCTA has failed to establish that any injury is fairly traceable to one of the two Towns before the Court.

In short, there is no allegation of *any* conduct by the Towns that has caused or contributed to the alleged injuries of NCTA's members, and thus NCTA has failed to satisfy its burden to demonstrate an injury that is fairly traceable to the Towns.  At most, NCTA's claim against the Towns rests on its wholly speculative allegation that one or both Towns "*may*" seek to enforce L.D. 1371 at some indefinite point in the future.  If this were enough to support standing, then a person could be hailed into federal court any time a statute was enacted that conferred a theoretical right of action on that person, which is contrary to established jurisdictional precedent and just public policy.  For all these reasons, the Court should find that any injury suffered by NCTA's members is not fairly traceable to the Towns.

### C.      The Alleged Injuries Will Not Be Redressed By Relief Against The Towns

Finally, any alleged injuries to NCTA's members will not be redressed by relief against the Towns, and full and fair relief can be accorded without the Towns in this lawsuit.  As noted above, NCTA's members have franchise agreements with 307 Maine municipalities, which would render any relief accorded against the two Towns in this lawsuit of negligible, if any, effect.  Compl. ¶ 27.  Conversely, a decision by the Court with respect to Attorney General Frey could accord full relief, and thus there is no need for the Towns to be parties in the first instance.  These facts demonstrate that the Towns are included in this lawsuit purely as a litigation tactic rather than to ensure actual relief, either to make an example of the Towns or to gain leverage.  The Court should not countenance such tactics by the cable companies, and should therefore dismiss the Towns.

## III.    NCTA's Claims Against The Cable Companies Are Not Ripe

A party invoking federal jurisdiction bears the burden of establishing both ripeness and standing.  *See Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999) (ripeness); *Lujan*, 504 U.S. at 561 (standing).  The ripeness doctrine "seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy*, 845 F.3d at 500.  The rationale is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  "Standing and ripeness have a 'close affinity' and may even 'overlap' with each other." *Portland Pipe Line Corp. v. City of S. Portland*, 164 F. Supp. 3d 157, 171 (D. Me. 2016).  "The overlap is most apparent in cases that deny standing because an anticipated injury is too remote." *McInnis-Misenor v. Maine*

15

*Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003) (citing 13A C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 3531.12, at 51 (2d ed. 1984)).

To determine whether a case is ripe for review, courts evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Portland Pipe Line Corp.*, 164 F. Supp. 3d at 171 (quotation marks omitted). Fitness and hardship "are related but distinct." *Id*. at 174 (quotation marks omitted). Under the first prong of this test, a matter is not ripe for judicial review where "it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted); *see also City of Fall River, Mass. v. F.E.R.C.*, 506 F.3d 1, 6 (1st Cir. 2007) (stating that a matter is not ripe where it "involves uncertain events which may not happen at all" (quotation marks omitted)). Under the second prong, "[i]f the court's interest tends toward postponement, [the court] must then weigh this consideration against the immediate impact of the actions on the challengers, and whether that impact is so harmful that present consideration is warranted." *Id.* at 6 (quotations marks omitted).

Here, for the same reasons that NCTA lacks standing vis-à-vis the Towns, NCTA's claims are not ripe as against the Towns. NCTA's claims against the Towns rest entirely on contingent future events that may not occur as anticipated or may not occur at all—specifically, the theoretical possibility that the Towns "may" seek to revoke their franchise agreements with NCTA's members or take some other unspecified future action with respect to L.D. 1371. *Cf.* Compl. ¶ 136. As noted above, there are lengthy requirements before the Towns may revoke their franchise agreements, and neither Town has invoked such process. Accordingly, NCTA's claims against the Towns are not ripe.

16

Furthermore, there would be no hardship to NCTA or its members should the Court withhold consideration as to the Towns at this time.  If the Towns are dismissed and subsequently seek enforcement of L.D. 1371, the ripeness question may be reevaluated at that time, in the context of a developed factual record.  Moreover, as noted above, a decision by the Court with respect to Attorney General Frey would fully resolve NCTA's claims.  In short, there will be no hardship to NCTA or its members if the Towns are dismissed from this Lawsuit. Accordingly, the Court should find that NCTA's claims against the Towns are not ripe.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss NCTA's claims against Defendants the Town of Freeport and the Town of North Yarmouth pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated:  September 30, 2019

*/s/ Eben M. Albert*
Eben M. Albert
Philip R. Saucier
Benjamin Dexter

BERNSTEIN SHUR
100 Middle Street
PO Box 9729
Portland, ME  04104-5029
207-774-1200
ealbert@bernsteinshur.com

Attorney for Defendants
Town of Freeport, Maine
Town of North Yarmouth, Maine