UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NCTA – INTERNET & TELEVISION ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Docket No. 2:19-cv-420-NT ) |
| AARON FREY, | ) ) |
| Defendant. | ) ) |

**ORDER ON PLAINTIFF'S RULE 62(D) MOTION TO ENJOIN ENFORCEMENT OF CHALLENGED PROVISIONS OF LD 1371**

The Plaintiff NCTA – The Internet & Television Association ("**NCTA**"), seeks to enjoin certain provisions of Maine law that govern cable operators while it appeals my earlier order denying that relief. I **DENY** the Plaintiff's motion for injunctive relief (ECF No. 63).

BACKGROUND

Last year, Maine enacted L.D. 1371, "An Act To Ensure Nondiscriminatory Treatment of Public, Educational and Governmental Access Channels by Cable System Operators" ("**LD 1371**"), which contains a number of provisions dealing with how cable operators provide and support public, educational, and government access channels ("**PEG channels**"). Among other things, LD 1371 requires cable operators: 1) to place PEG channels in positions near local broadcasting stations on the basic tier; 2) to retransmit PEG channel signals in the format in which they are received from PEG channel originators and at the same signal quality as local broadcast

channels; and 3) to provide PEG channel originators with access to cable television services' electronic programming guides (the "**PEG provisions**"). 30-A M.R.S. §§ 3008, 3010. In addition, the law requires cable operators to extend cable service to areas that have a population density of at least 15 residences per linear strand mile (the "**line extension provision**"). 30-A M.R.S. § 3008.

The Plaintiff NCTA, a national trade association representing cable operators,[1] challenged the above provisions of LD 1371 as facially unconstitutional. NCTA claimed that the PEG and line extension provisions are preempted by federal law that governs cable communications, 47 U.S.C. §§ 521–573 ("**Federal Cable Law**"), and claimed that the PEG provisions also violate the First Amendment rights of its cable operator members.

On March 11, 2020, I issued a final decision on the merits, denying each of the Plaintiff's claims for declaratory and injunctive relief in full. Order (ECF No. 60). On March 31, 2020, the Attorney General agreed to stay enforcement of the PEG provisions until May 30, 2020, to give cable operators time to comply with the law or seek a stay pending appeal. Mot. to Expedite ¶ 3 (ECF No. 67). On April 10, 2020, the Plaintiff filed its notice of appeal and the pending motion under Rule 62(d). Pl.'s Notice of Appeal (ECF No. 62); Pl.'s Mot. for Injunctive Relief (ECF No. 63). I gave the parties time to work out a negotiated agreement, but they were unable to come to terms. *See* Status Report (ECF No. 82).

---

[1] Comcast Cable Communications LLC and Charter Communications, Inc. are NCTA members that operate in Maine.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from a[] . . . final judgment that . . . refuses . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civil Proc. 62(d). The Plaintiff bears the burden of establishing that I should exercise my discretion to enjoin the PEG provisions and the line extension provision pending appeal. *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010). My analysis is guided by four factors: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether issuance of relief will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). "In essence, the issuance of a stay depends on whether the harm caused movant without the stay, in light of the movant's likelihood of eventual success on the merits, outweighs the harm the stay will cause the non-moving party." *Acevedo-García v. Vera-Monroig*, 296 F.3d 13, 16–17 (1st Cir. 2002) (internal quotations and alterations omitted).

### II. Application

#### A. Likelihood of Success

I first consider whether the Plaintiff is likely to succeed on the merits of its appeal. The Plaintiff argues that it need only show that its appeal "raises 'serious legal questions'" to be entitled to an injunction pending appeal. Mot. 3 (quoting

*Providence Journal Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979)). Though I agree that, "[w]hen the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal," *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998), the standard is not as low as the Plaintiff suggests.

The First Circuit granted a stay pending appeal in *Providence Journal*, because the appeal both raised "serious legal questions" and failure to grant the stay would "destroy [the movant's] rights to secure meaningful review." 595 F.2d at 890. While the Plaintiff's challenge presents questions of first impression in this Circuit, and there is a possibility that the First Circuit could go in a different direction, the Plaintiff has offered nothing that would change my belief that it is unlikely to succeed on the merits. In denying the Plaintiff's request for a *permanent* injunction, I concluded not just that the Plaintiff was unlikely to succeed on the merits, but that it had not succeeded on the merits. I rested that ruling in part on the Plaintiff's failure to meet the heavy burden of a facial constitutional challenge by establishing that the PEG and line extension provisions are in conflict with federal law in all circumstances or that the PEG provisions run afoul of the First Amendment. I found that the Federal Cable Law is quite clearly designed to allow states and local communities considerable regulatory authority, and that local franchising authorities, as opposed to cable operators, possess the First Amendment rights when it comes to PEG channels. "The sine qua non of the stay pending appeal standard is whether the

4

movants are likely to succeed on the merits." *See Acevedo-García*, 296 F.3d at 16 (alterations omitted). The Plaintiffs have not met that standard here.

### B. Irreparable Harm

The First Circuit has observed that irreparable harm works in conjunction with the likelihood of success on the merits. *See Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (collecting cases); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("[A]n attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."). Ultimately, the "First Circuit has cautioned that 'what matters is not the raw amount of irreparable harm a party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits.' " *Coastal Ctys. Workforce, Inc. v. LePage*, No. 1:17-CV-00417-JAW, 2018 WL 545712, at *4 (D. Me. Jan. 24, 2018) (alterations omitted) (quoting *P.R. Hosp. Supply, Inc. v. Boston Scientific Corp.*, 426 F.3d 503, 507 n.1 (1st Cir. 2005)).

A stay should issue if failing to do so would "destroy [the Plaintiff's] rights to secure meaningful review" on appeal. *See Providence Journal*, 595 F.2d at 890. Although implementing LD 1371 will require cable operators to make some expenditures, it will not deny them meaningful review on appeal. While the Plaintiff's affidavits claim that cable operators will be required to divert employees' time and attention away from the additional challenges they face during the COVID-19 pandemic, they do not provide any real detail on how much employee time will be

5

required. Given the relatively small number of PEG stations in Maine,[2] I am not persuaded that the cable operators will be so overwhelmed by implementing the PEG provisions that they will suffer irreparable harm. Moreover, the Plaintiff's suggestion that cable operators would suffer a significant loss of consumer good will from relocating PEG channels seems implausible. The cable operators can communicate that the movement of channels was required by the new law and thus deflect responsibility for the decision to the Maine legislature. And presumably some customers will be happy to see the PEG channels restored to their previous positions. Finally, as I noted in my opinion, the line extension provision, which may cause cable operators to incur significant costs, applies only to franchises that are up for renewal and can be challenged by a cable operator on an as-applied basis.

C. **Harm to the State and the Public Interest**

I consider the final two factors together. In enacting the federal cable laws, Congress treated PEG channels as vital to "an informed citizenry." H.R. Rep. No. 98-934 at 4667, *reprinted in* 1984 U.S. Code Cong. & Admin. News. Cable operators in Maine took it upon themselves to move PEG channels far from the positions they had long-enjoyed and into digital Siberia. Order 6. In doing so, the cable operators confused viewers and degraded the value of PEG channels. LD 1371—enacted in June of 2019 and scheduled to go into effect in September of 2019—sought to restore the

---

[2] About two-thirds of Comcast's 15 Maine franchise agreements and one-third of Charter's 292 Maine franchise agreements designate at least one PEG channel. *See* Order 38 (citing Decl. of Mark Reilly ¶ 18; Decl. of Adam Falk ¶ 21). LD 1371 requires the cable operators to return 48 PEG channels to the original channel position that they occupied before the cable operators relocated them. Status Report 1. Only 13 of those channels must be returned to channel positions that are currently occupied, and only 2 PEG channel relocations would display network affiliates. Status Report 1.

status quo. Particularly now, when residents are staying at home and contending with a global pandemic, "PEG stations are more important than ever." Def.'s Opp'n 13. Ensuring that PEG channels are accessible and viewable is also more crucial than ever. The public, through its legislature, has spoken; the citizens of Maine have been waiting for the implementation of this law, enacted by their duly-elected representatives, for nearly a year. The public interest is best served by allowing LD 1371 to go into effect.

## CONCLUSION

For the reasons stated above, I **DENY** the Plaintiff's motion for injunctive relief pending appeal (ECF No. 63).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 18th day of May, 2020.